UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEVIN MCGILL,<br><br>    Plaintiff,<br><br>v.<br><br>COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC,<br><br>    Defendant. | Case No. 16-cv-05202-NC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 59 |

Disagreement is nearly inevitable when an employer-employee relationship breaks down. Especially so when, as here, an employee tries unsuccessfully for years to climb the ranks in an organization, only to be met with an investigation against him and, eventually, termination. But discerning mere disagreement from illegal conduct is a tricky proposition. From the perspective of plaintiff Devin McGill, this is a case about age discrimination, opaque and impossible-to-follow on-call policies, and vindictive managers. Defendant Comcast Cable Communications Management, LLC would cast the dispute as the huffing of a ruffled former employee, bitter that he was never promoted and caught red-handed fraudulently recording unworked time.

Before the Court is Comcast's motion for summary judgment on McGill's claims that Comcast violated the California Fair Employment and Housing Act (FEHA), the California Labor Code, and California common law when it terminated him from his job as

a technician. The parties square off most vigorously on the issue of retaliation, but also dispute whether Comcast discriminated against McGill for his age or violated the Labor Code's prescription of mandatory rest breaks. The evidence on record does not support McGill's discrimination or retaliation claims such that a reasonable jury could find on his behalf. On the other hand, the evidence shows it is genuinely disputed whether Comcast meaningfully allowed its employees to take rest breaks. Accordingly, Comcast's motion for partial summary judgment is GRANTED IN PART and DENIED IN PART.

## I. BACKGROUND

### a. Factual Background

Except where noted, the following facts are undisputed.

Comcast is a telecommunications company that provides telephone, video, internet, and home security services to residential and commercial customers. Dkt. No. 59 at 10. Beginning July 28, 2006, and continuing through his eventual termination on November 2, 2015, McGill was employed by Comcast as a non-exempt Commercial Technician 4 ("CT-4"). Dkt. Nos. 35 at 4, 59 at 10. As a CT-4, McGill responded to service calls within a designated territory, driving to client sites to perform installations, repair cable lines, and restore internet and others services. Dkt. Nos. 35 at 5, 59 at 10. McGill worked out of Comcast's San Jose office during all times relevant to this action. Dkt. No. 59 at 10–11.

Comcast gave McGill daily work assignments, with each assignment scheduled for a specific time frame. McGill's normal work schedule was Monday through Friday, 8:00 a.m. to 5:00 p.m. 59-1 at 14. Usually, Comcast assigned McGill to commercial customers and scheduled each assignment for two hours, so a standard day involved around four two-hour assignments to commercial clients, though specific assignments varied somewhat. 59-1 at 15–17; 61-2 at 11–12. After joining a team "huddle" that took place at the San Jose office each morning, McGill spent the remainder of the day working independently to complete his assignments. Dkt. Nos. 59 at 10, 59-1 at 14. McGill then reported his hours worked on a timesheet, which was reviewed and approved by a supervisor. *See* Dkt. No. 61-2 at 6.

McGill also fulfilled standby or on-call duties outside of his normal work schedule for a week at a time, approximately once every two months. Dkt. No. 59 at 10. Although McGill asserts the on-call policy was unclear to him during his employment, the parties do not now dispute its operation. Under the policy, McGill earned his hourly rate for any time he actually worked, with a guaranteed minimum of $40 per day if he responded to a call. For the first, but not subsequent, physical call-out per day (i.e. responding to a call by going to a client site rather than remote repair), McGill was guaranteed two hours' worth of wages. Dkt. Nos. 35 at 6, 59 at 11.

McGill claims he was required to clock out every day for an hour-long lunch break, regardless of whether he actually worked during that hour. McGill testified that he complained to several supervisors that he was not able to take his lunch break, even though he was being required to clock out. Dkt. Nos. 35 at 5, 59-1 at 20–21. These supervisors include Joe Romero, Ron Guerra, Iziaz Ballesteros, and Charanjit Badyal. Dkt. Nos. 35 at 6–8, 59-1 at 21.

McGill applied for and was denied promotions multiple times over the course of his employment. McGill applied for a CT-5 position in the San Jose office in late 2011, but did not receive the promotion. Dkt. Nos. 35 at 7, 59 at 12. McGill applied for a CT-5 position again in August 2014 and again did not receive the promotion. Dkt. Nos. 35 at 8, 59 at 12. Some of the people hired for the CT-5 position instead of McGill were younger than him. Dkt. No. 61-1 at 35–36. McGill applied in August 2015 for a CT-5 position in Comcast's Scotts Valley office and was told he was a final candidate for the position, but he needed to reside in Santa Cruz County to take it. Dkt. Nos. 59 at 12, 61-1 at 39–40.

On September 10, 2015, around the same time McGill applied for the Scotts Valley CT-5 position, Comcast began an investigation into McGill's timesheets and on-call practices. The investigation was conducted by Comcast's security department, and it concluded that McGill had regularly claimed overtime hours for his drive time to and from his home, claimed the 2-hour minimum callout pay most nights when he was on-call, and claimed a full day of overtime for a day on which he did not work at all. *See* Dkt. No. 59-2

Case No. 16-cv-05202-NC        3

at 10–19. Comcast terminated McGill's employment on November 2, 2015. Dkt. No. 61-1 at 4.

### b. Procedural History

McGill originally filed this action in Santa Clara County Superior Court, alleging only rest and meal break violations of the California Labor Code. Dkt. No. 1 at 11. Comcast properly removed the action to federal court on the basis of diversity jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1441(b). Dkt. No. 1. On November 1, 2016, after the case was removed, McGill filed a complaint with the Department of Fair Employment and Housing (DFEH) alleging discrimination, harassment, and retaliation based in part on his age. Dkt. No. 59-1 152–57. The DFEH issued McGill a right-to-sue notice letter the same day. *Id.*

On February 9, 2017, McGill filed an amended complaint alleging seven causes of action: (1) age discrimination under FEHA, California Government Code § 12940(a); (2) hostile work environment harassment under FEHA, California Government Code § 12940(j); (3) retaliation under FEHA, California Government Code § 12940(h); (4) failure to prevent discrimination, harassment, and retaliation under FEHA, California Government Code § 12940(k); (5) failure to provide adequate meal and rest periods in violation of California Labor Code §§ 226.7 and 512; (6) whistleblower retaliation in violation of California Labor Code §§ 98.6 and 1102.5; and (7) adverse employment action in violation of public policy. Dkt. No. 35. McGill also seeks punitive damages and attorney fees. Dkt. No. 35.

Comcast now moves for partial summary judgment, seeking judgment on all causes of action, except McGill's claim of Labor Code meal break violations. Dkt. No. 59. McGill opposes the motion. Dkt. No. 60. All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. 636(c). Dkt. Nos. 8, 9.

## II. LEGAL STANDARD

Summary judgment may be granted only when, drawing all inferences and resolving all doubts in favor of the nonmoving party, there is no genuine dispute as to any

Case No. 16-cv-05202-NC 4

material fact. Fed. R. Civ. P. 56(a); *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Bald assertions that genuine issues of material fact exist are insufficient. *Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).

The moving party bears the burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings, and, by its own affidavits or discovery, set forth specific facts showing that a genuine issue of fact exists for trial. Fed. R. Civ. P. 56(c); *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1004 (9th Cir. 1990) (citing *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983)). All justifiable inferences, however, must be drawn in the light most favorable to the nonmoving party. *Tolan*, 134 S. Ct. at 1863 (citing *Liberty Lobby*, 477 U.S. at 255).

## III. DISCUSSION

The Court first addresses McGill's four FEHA claims, combining the retaliation claims under California Labor Code §§ 98.6 and 1102.5 with the FEHA retaliation claim. The Court next addresses McGill's tort claim alleging adverse employment action in violation of public policy, then McGill's Labor Code § 226.7 claim for rest period violations, and finally punitive damages and attorney fees.

### a. McGill's FEHA Claims Do Not Raise Triable Issues.

As a threshold matter, a plaintiff asserting a claim based on FEHA must file an administrative complaint with the California Department of Fair Employment and Housing (DFEH) within one year of the date the alleged unlawful practice occurred, or else the claim is time barred. Cal. Gov. Code § 12960(d). McGill filed an administrative complaint with the DFEH on November 1, 2016, one day shy of a year after his

Case No. 16-cv-05202-NC 5

termination on November 2, 2015.

The complaint makes the present action timely with respect to McGill's termination, but untimely with respect to any adverse employment action occurring before then.[1] Thus, the Court considers McGill's FEHA claims only to the extent they are based on McGill's termination. Any earlier events "may constitute relevant background evidence," but they have no separate legal consequence for FEHA liability. *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977) (interpreting federal Title VII claims).

McGill's FEHA claims are evaluated using the familiar three-step, burden-shifting test from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 354 (2000) (recognizing that California has adopted the *McDonnell Douglas* test for FEHA discrimination claims). At the first step, the plaintiff has the burden of establishing a prima facie case of discrimination. This burden requires the plaintiff to identify an action taken by the employer that, if unexplained, gives rise to an inference of discrimination. *Guz*, 24 Cal. 4th at 355. If the plaintiff meets his burden at the first step, the employer must then produce evidence that there was a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* at 355–56. In the third step, the plaintiff has an opportunity to attack the employer's proffered legitimate reasons as mere pretext for discrimination, or to offer other evidence of discriminatory motive. *Id.* at 356. Ultimately, the question is "simply whether the employer acted with a motive to discriminate illegally." *Id.* at 358 (emphasis omitted).

The *McDonnell Douglas* framework changes slightly if the defendant employer moves for summary judgment. As the moving party, the employer has the initial burden to present admissible evidence showing either that an element of the plaintiff's prima facie case is lacking, or that the adverse employment action was for legitimate,

---

[1] The continuing violation doctrine, which makes otherwise untimely events actionable, does not apply to the decisions not to promote McGill in 2011 and 2014. These events are separate, discrete occurrences that acquired a degree of permanence sufficient to put McGill on notice to assert his rights. *See Richards v. CH2M Hill, Inc.*, 26 Cal. 4th 798, 823 (2001).

nondiscriminatory reasons. *Hicks v. KNTV Television, Inc.*, 160 Cal. App. 4th 994, 1003 (2008); *Guz*, 24 Cal. 4th at 357. In the latter case, where the employer meets the burden by showing a nondiscriminatory basis for the termination, the employee must demonstrate a triable issue by producing "substantial evidence" that the employer's proffered reasons are pretextual or that the employer acted with discriminatory animus. *Cucuzza v. City of Santa Clara*, 104 Cal. App. 4th 1031, 1038 (2002). The evidence must permit a reasonable factfinder to conclude that the employer intentionally discriminated. *Id*.

Here, Comcast does both. It attacks the evidence supporting McGill's prima facie claims, and it offers evidence that McGill's termination was for a legitimate, nondiscriminatory reason. Because the latter is common to each of McGill's FEHA claims, the Court focuses its analysis on this reason. The Court first scrutinizes the evidence supporting Comcast's proffered nondiscriminatory reason for McGill's termination, and then addresses each of McGill's FEHA claims in light of that proffered reason.

### i. Comcast Satisfies Its Initial Summary Judgment Burden with Evidence of Legitimate, Nondiscriminatory Reasons for McGill's Termination.

Comcast asserts it fired McGill because it noticed unusual timesheet entries for McGill's on-call hours worked, launched an investigation in response, and discovered that McGill fraudulently filled out his timesheets. Specifically, Comcast alleges McGill committed timesheet fraud by claiming overtime for his drive time to and from his home, claiming a 2-hour callout pay almost every night that he was on-call, and claiming a day of overtime that he did not work. Matt Silvey, the supervisor who ultimately made the decision to terminate McGill, testified that he noticed McGill logging excessive overtime hours, began an investigation, and then turned the investigation over to Comcast's security department. When the security investigator confirmed that McGill had engaged in timesheet fraud, Silvey states he conferred with other supervisors and human resources personnel, and recommended that McGill be terminated. Dkt. No. 59-4 at 3–4.

The evidence supports this proffered nondiscriminatory reason. It is undisputed that

Case No. 16-cv-05202-NC        7

Comcast's security investigator Barry Barner investigated McGill's timesheet and on-call practices, and Barner's report found the suspicions of fraud to be "substantiated." *See* Dkt. No. 59-2 at 10–19. McGill acknowledged that he violated Comcast's timesheet and on-call policies, and testified that he believed these were the reasons behind his termination. *See* Dkt. No. 61-1 at 11–12 (McGill admitting he did not follow Comcast's policy requiring to-the-minute time entries), and at 14 ("Q. Mr. McGill, why do you believe you were terminated? . . . A. From misunderstanding of the On-Call Policy and Procedures.").

This asserted nondiscriminatory reason and supporting evidence satisfies Comcast's initial summary judgment burden under the modified *McDonnell Douglas* framework. Comcast's assertion that McGill was terminated because he fraudulently completed his timesheets and violated Comcast's on-call policy is the operative nondiscriminatory reason that McGill must rebut with specific, substantial evidence of pretext or discriminatory motive.

Understanding Comcast's proffered reason for discrimination, the question for each of McGill's FEHA claims is whether McGill presents evidence of pretext or otherwise shows that Comcast's true motives were discriminatory.

### ii. McGill's Age Discrimination Claim Is Unsupported by Evidence.

In his opposition brief, McGill makes no argument in defense of his FEHA claim for age discrimination. Despite McGill's abandonment of the claim, "Rule 56 requires district courts to assess whether 'the motion and supporting materials' entitle the movant to summary judgment." *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013) (quoting Fed. R. Civ. P. 56(e)(2)).

Here, the evidence does entitle Comcast to summary judgment, because McGill's only evidence of age discrimination is his own speculative testimony that age played a role in earlier promotion denials and his eventual termination. At his deposition, McGill testified, "I feel that every time I applied for a CT-5 position I was stopped by leadership for no apparent reason." Dkt. No. 59-1 at 65. This included his termination, McGill testified, because his superiors wanted to "stop me from transferring in [to the Scotts

Case No. 16-cv-05202-NC 8

Valley office]. . . because of my age." Dkt. No. 59-1 at 65. McGill also claims his supervisors joked about his age after he did not receive CT-5 promotions, allegedly saying McGill was "an old man in a young man's game." Dkt. No. 61-1 at 38. Referring to these failed efforts at promotion in 2011 and 2014, McGill stated it "was either one of two things for me personally, it was either my age, or . . . it was favoritism system and they were bringing their buddies up and promoting their buddies instead of promoting someone like me." Dkt. No. 59-1 at 63. McGill agreed that it was his "personal feelings" that led him to this conclusion. Dkt. No. 59-1 at 64.

This subjective and speculative testimony may or may not establish a prima facie case of age discrimination, but it is not the "substantial evidence" required to demonstrate pretext. *Martin v. Lockheed Missiles & Space Co.*, 29 Cal. App. 4th 1718, 1735 (1994) ("[S]peculation cannot be regarded as substantial responsive evidence."). McGill does not direct the Court to any other evidence of age discrimination, and "[i]t is not the court's task to scour the record in search of a genuine issue of triable fact." *Holmes v. Tenderloin Hous. Clinic, Inc.*, 772 F. Supp. 2d 1074, 1088 (N.D. Cal. 2011) (citing *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996)). Especially in light of the fact that the person who was eventually offered the Scotts Valley CT-5 position was the same age as McGill, Dkt. No. 59-4 at 4, it would be unreasonable in light of the evidence presented to disbelieve Comcast's nondiscriminatory reason and instead conclude that Comcast intentionally discriminated against McGill because of his age. Comcast's motion for summary judgment on McGill's FEHA age discrimination claim is GRANTED.

### iii. McGill's Claim for Workplace Harassment Is Time-Barred.

McGill's second cause of action, alleging hostile workplace harassment, is based entirely on events that occurred before his termination, meaning the claim is time-barred. Necessarily, Comcast's motion for summary judgment is GRANTED on this claim.

### iv. McGill's Retaliation Claims Do Not Raise Triable Issues of Fact.

McGill asserts he was terminated for complaining to his supervisors about age discrimination and about Comcast's alleged violations of rest and meal break

Case No. 16-cv-05202-NC          9

requirements. McGill brings these retaliation claims under three statutory provisions: FEHA, California Government Code § 12940(h); California Labor Code § 98.6; and California Labor Code § 1102.5. As pled, McGill does not state a claim under any of these provisions except for a narrow claim under FEHA, and that narrow claim is subject to summary judgment because the evidence presented does not create a triable issue of fact.

First, McGill's claim under Labor Code § 98.6 fails as a matter of law, because McGill does not purport to have taken any of the actions enumerated in that provision.[2] McGill claims only that he informally complained to his supervisors. Despite its seemingly broad reference to "the exercise . . . of any rights," Labor Code § 98.6 does not protect against retaliation for this type of informal complaint. *See Grinzi v. San Diego Hospice Corp.*, 120 Cal. App. 4th 72, 87 (2004) ("[T]he Legislature has indicated an intention to limit the proscription against terminations for the exercise of 'any rights' to the exercise of those rights 'otherwise protected by the Labor Code.'"); *Hollie v. Concentra Health Servs., Inc.*, No. 10-cv-5197-PJH, 2012 WL 993522, at *7 (N.D. Cal. Mar. 23, 2012) (analyzing the "any rights" language and finding as a matter of law that verbal and e-mail complaints to supervisors "do not fall within the categories set forth in [§ 98.6]").

Next, Labor Code § 1102.5 protects whistleblowers who "disclose" information, either to an external source or to a superior within the employer's organization. Under California law, "disclosure" in the context of § 1102.5(b) "means to reveal something that was hidden and not known." *Mize-Kurzman v. Marin Cmty. Coll. Dist.*, 202 Cal. App. 4th 832, 858 (2012) ("We agree with . . . federal cases that have held that the report of

---

[2] Labor Code § 98.6 prohibits retaliation against an employee who:
> engaged in any conduct delineated in this chapter, including the conduct described in subdivision (k) of Section 96, and Chapter 5 (commencing with Section 1101) of Part 3 of Division 2, or because the employee or applicant for employment has filed a bona fide complaint or claim or instituted or caused to be instituted any proceeding under or relating to his or her rights that are under the jurisdiction of the Labor Commissioner, made a written or oral complaint that he or she is owed unpaid wages, or because the employee has initiated any action or notice pursuant to Section 2699, or has testified or is about to testify in a proceeding pursuant to that section, or because of the exercise by the employee or applicant for employment on behalf of himself, herself, or others of any rights afforded him or her.

Case No. 16-cv-05202-NC 10

information that was already known did not constitute a protected disclosure.").

Here, McGill does not allege that he disclosed age discrimination or rest and meal break violations to someone who did not know about them. Instead, McGill specifically testified that he did not take his complaints to Comcast's human resources department or call the internal "Comcast Listens" line, and complained only to supervisors and managers who already knew about—and indeed, were implementing—the allegedly unlawful activity. *See*, *e.g.*, Dkt. No. 61-1 at 48, 57 (McGill Dep. 190:9-18, 236:6-11) ("I didn't feel the need to make [complaints] in writing, I just was venting to my supervisors over it, expecting them to correct the problem."). McGill did not blow a whistle by disclosing previously unknown information, so he does not state a claim for retaliation under Labor Code § 1102.5. *See Mize-Kurzman*, 202 Cal. App. 4th at 866; *accord Guthmann v. Classic Residence Mgmt. Ltd. Pship*, No. 16-cv-02680-LHK, 2017 WL 3007076, at *17 (N.D. Cal. July 14, 2017).

Finally, only a narrow version of McGill's retaliation claim is cognizable under FEHA. The anti-retaliation provision's self-limiting language protects opposition only to those practices that FEHA itself proscribes. *See* Cal. Gov. Code § 12940(h) (prohibiting an employer from discharging an employee "because the person has opposed any practices *forbidden under this part*") (emphasis added). FEHA does not speak to rest or meal breaks, so McGill's complaints about these issues fall outside the protective penumbra of § 12940(h). Thus, as a legal matter, McGill's only cognizable claim for retaliation is that Comcast fired him because he complained about or otherwise opposed a practice of age discrimination specifically.

On this narrower claim, McGill's theory of retaliation is as follows. In 2014, Comcast did not promote McGill to a CT-5 position, and instead promoted younger, less experienced employees. McGill then complained to his management that he was discriminated against based on his age. When he applied for the Scotts Valley CT-5 position, Comcast knew that if McGill was again passed over for promotion, he would again raise allegations of age discrimination. Instead of risking this, Comcast conditioned

Case No. 16-cv-05202-NC 11

the promotion on moving to another city, and when McGill nonetheless agreed to take the job, Comcast launched the investigation into McGill's timesheets as an excuse to terminate him. In short, McGill asserts the timesheet investigation was pretext for Comcast's true motive, which was to prevent McGill from again sounding the alarm on Comcast's age discrimination practices. *See* Dkt. No. 60 at 9.

McGill's evidence supporting this theory is insufficient to survive summary judgment, because McGill cannot show a causal link between his age discrimination complaints and his termination that rebuts Comcast's nondiscriminatory reason for the termination. The Court discusses separately the direct and circumstantial evidence of pretext.

### 1. There Is No Direct Evidence of Pretext.

First, there is no direct evidence linking McGill's complaints[3] to his termination. Instead, the evidence on record shows that the supervisors who initiated the investigation into McGill's timesheets and who made the termination decision did not know that McGill had complained about age discrimination, and did not consider McGill's age when these decisions were made. Matt Silvey, the supervisor who initiated the investigation against McGill, testified that neither he nor "anybody in the decision-making process had ever heard of a complaint of [age discrimination by McGill] prior to this case being presented to Comcast." Dkt. No. 61-7 at 6–7; *accord* Dkt. No. 59-4 at 6 (Silvey Decl. ¶ 16). Similarly, Barry Barner, who led the investigation, testified that he was not aware of McGill raising concerns over his age being a factor in promotion decisions. Dkt. No. 67-2 at 7. Marc Colombo and Dolores Lopez offered similar testimony. *See* Dkt. Nos. 59-6 at 3 (Colombo Decl. ¶ 7), 59-5 at 4 (Lopez Decl. ¶ 7).

McGill does not offer any contrary evidence. Instead, his own testimony at times contradicts his assertion that he raised age discrimination complaints in the first place,

---

[3] It is factually disputed whether McGill ever complained to his supervisors about age discrimination at all. *See* Dkt. Nos. 59 at 27, 60 at 8–9. The Court construes the issue in McGill's favor, because McGill presents admissible evidence that he did make such complaints. *See* Dkt. No. 61-1 at 49–51.

Case No. 16-cv-05202-NC          12

which in turn casts doubt on the notion that Comcast supervisors knew about such complaints. *See* Dkt. No. 61-1 at 49 ("I didn't really have a one-on-one conversation with anybody about being discriminated against at the office."), and at 51 ("I just was complaining about not getting the promotions because I was older than the other technicians."). McGill's testimony also suggests that any malice in the firing decision existed, not in the form of retaliatory motive, but because Marc Colombo and Matt Silvey "honestly did not like" McGill and "were going to do whatever it took to keep [McGill] back." Dkt. No. 59-1 at 76. This testimony evinces personal dislike, not retaliation for complaints of age discrimination. Finally, portions of McGill's testimony directly support Comcast's assertion that it fired McGill for violating on-call policies. Dkt. No. 59-1 at 31 (opining that Comcast fired McGill "[f]rom misunderstanding of the On-Call Policy and Procedures").

In sum, there is no direct evidence that McGill's disputed age discrimination complaints animated the investigation into his timesheets or his eventual termination.

### 2. The Circumstantial Evidence Does Not Support an Inference of Pretext.

Absent direct evidence, pretext may be inferred through specific and substantial circumstantial evidence. McGill argues that the timing of events and Comcast's poor implementation of its on-call policies support an inference of pretext.

Regarding timing, "in some cases, causation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002). To support an inference of retaliatory motive, a termination "must have occurred fairly soon after the employee's protected expression." *Villiarimo*, 281 F.3d at 1065.

Here, McGill claims he complained about age discrimination following his unsuccessful effort at promotion in August 2014, more than a year prior to his termination in November 2015. Such a gap between the protected activity and the adverse employment action is "too long, by itself, to give rise to an inference of causation."

Case No. 16-cv-05202-NC 13

*Villiarimo*, 281 F.3d at 1065 (holding that a nearly 18-month gap is too long, and citing with approval cases holding that lapses of four months, five months, and eight months did not establish causation); *see also Guthmann v. Classic Residence Mgmt. Ltd. P'ship*, No. 16-cv-02680-LHK, 2017 WL 3007076, at *16 (N.D. Cal. July 14, 2017) (finding a gap of roughly one year too long to establish causation). To the extent McGill complained about age discrimination throughout his tenure at Comcast, not just in August 2014, the vague and non-specific timing of such complaints, without more, does not reasonably support an inference of retaliation based on temporal proximity.

McGill also points to Comcast's own mismanagement of its on-call policy as a basis for inferring pretext. McGill asserts that Comcast's on-call policies were not clearly communicated or consistently enforced, that McGill simply followed his managers' directions, and that McGill should have been given a chance to correct any problems before being fired. As an overarching problem, McGill asserts Comcast "refused to provide" its technicians with copies of the policy and instead communicated the policy through human resources to upper level managers. Dkt. No. 61-1 at 14–15. These managers, in turn, "never discussed On-Call Policy and Procedures with [McGill's] department, only with the Network Department," meaning there "was probably a misunderstanding in it." Dkt. No. 61-1 at 22–23.

Despite the lack of clarity, McGill argues he "executed the policy to the best of his ability, following the direction of his man[a]gers." Dkt. No. 60 at 12. Specifically, McGill testified that when he incorrectly listed time worked on a Sunday—a timesheet error central to Comcast's finding of fraud—it was because Comcast's computer system auto-populated the field, and it was his manager's responsibility to catch the error. Dkt. No. 60 at 11. Similarly, McGill claims that "whatever Joe [Romero] told me on the paper that he gave me is what I changed my time on my time sheet to. Because I was told that the on call I was doing was incorrect." Dkt. No. 61-1 at 22–23.

On top of the inconsistency and lack of clarity, McGill argues his termination was suspiciously anomalous, because he had never been reprimanded for identical timesheet

Case No. 16-cv-05202-NC         14

practices over the course of 8 years of employment, and no other technicians were disciplined for the same improper implementation of the on-call policy. Dkt. No. 60 at 12. In light of all of the above, McGill argues he should have been given a chance to correct his mistakes before being terminated. Dkt. No. 60 at 11.

Unfortunately for McGill, these arguments do not demonstrate pretext, even where they are factually supported. Comcast asserts that it terminated McGill because it relied on Barner's security investigation, which found evidence of fraud and violations of Comcast's timesheet policies. The problem with McGill's arguments is that they attack the veracity of Barner's findings and the fairness of Comcast's on-call policy. But it does not matter for purposes of showing pretext whether Barner was right or wrong in concluding McGill engaged in fraud and misconduct, nor whether the on-call policy was effectively communicated to all employees. Comcast's reason is "legitimate" if the supervisors who made the termination decision reasonably and honestly believed Barner's findings of fraud, which they uniformly claim they did. *See King v. United Parcel Serv., Inc.*, 152 Cal. App. 4th 426, 444 (2007) (finding no pretext where the defendant company's management mistakenly but "honestly believed" the plaintiff had falsified a driver's timecard).

The bottom line is that the evidence does not contradict Comcast's legitimate, nondiscriminatory reason for firing McGill. If anything, the evidence, including McGill's own testimony, supports the fact that Comcast fired McGill because a security investigation revealed that he filled out his timesheets incorrectly, including claiming pay for time that he did not actually work. Regardless of whether McGill actually did those things, the evidence confirms that the Comcast supervisors responsible for McGill's termination believed he did when they fired him. *See* Dkt. Nos. 59-4 at 4 (Silvey), 59-6 at 3 (Colombo). Based on his evidence about Comcast's opaque and confusing on-call policy, McGill is justified in his frustration over being fired for not complying with it. But this frustration does not equate to showing retaliatory, discriminatory animus by Comcast. Absent even a speck of direct evidence that McGill's (disputed) complaints of age discrimination animated the termination decision, Comcast's motion for summary

Case No. 16-cv-05202-NC  15

1 judgment on McGill's retaliation claim is GRANTED.

### v. McGill's Claim for Failure to Prevent Discrimination, Harassment, or Retaliation Falls with His Other FEHA Claims.

The final FEHA claim McGill pled in his complaint (though not addressed in his opposition brief) asserts Comcast failed to prevent discrimination, harassment, and retaliation. To establish this claim, there must be an underlying showing that discrimination, harassment, or retaliation took place. *See Trujillo v. North County Transit Dist.*, 63 Cal. App. 4th 280, 283–84 (1998) (affirming a judgment notwithstanding the verdict, because an employee cannot "sue an employer for preventing discrimination that didn't happen"); *Carter v. California Dep't of Veterans Affairs*, 38 Cal. 4th 914, 925 n.4 (2006) (noting the holding in *Trujillo*). Because McGill's FEHA claims for age discrimination, age harassment, and retaliation are subject to summary judgment, so too is his claim that Comcast failed to prevent these things. Comcast's motion is GRANTED on this claim.

### b. McGill's Derivative Tort Claim Is Subject to Summary Judgment.

McGill does not address in his opposition brief his seventh cause of action for adverse employment action in violation of public policy. Comcast characterizes this claim as derivative of McGill's FEHA and Labor Code claims. *See* Dkt. No. 59 at 30. The Court recognizes that this common law tort could, under certain circumstances, extend to actions that are not time-barred under FEHA or are beyond the scope of the Labor Code claims. *See Garcia v. Rockwell Internat. Corp.*, 187 Cal. App. 3d 1556, 1562 (1986), *abrogated on other grounds by Gantt v. Sentry Ins.*, 1 Cal. 4th 1083 (1992) (holding that an employee can maintain a tort claim against an employer for adverse employment actions other than discharge). However, McGill makes no argument of this and offers no evidence beyond his claims under FEHA and the Labor Code. Thus, McGill's tort claim is subject to summary judgment for the same reasons those claims are. *See Guthmann v. Classic Residence Mgmt. Ltd. P'ship*, No. 16-cv-02680-LHK, 2017 WL 3007076, at *17 (N.D. Cal. July 14, 2017) (finding summary judgment warranted on a "derivative claim for

Case No. 16-cv-05202-NC    16

wrongful termination" where FEHA and Labor Code § 98.6 claims could not be proved); *Hoskins v. BP Prod. N. Am. Inc.*, 2014 WL 116280, at *7 (C.D. Cal. Jan. 9, 2014) (citing *Reno v. Baird*, 18 Cal. 4th 640, 664 (1998) ("[I]f a plaintiff cannot sue the defendant for discrimination or retaliation under FEHA, the plaintiff cannot sue the defendant for wrongful termination in violation of FEHA or public policy.").

### c. McGill's Claim for Failure to Provide Rest Breaks Raises Triable Issues of Fact.

McGill's fifth cause of action alleges that Comcast violated California Labor Code § 226.7, which requires employers to provide non-exempt employees rest and meal breaks, and § 512, which requires provision of meal breaks. Comcast moves for summary judgment only on the claim for rest break violations under Labor Code § 226.7. *See* Dkt. No. 59 at 29.

In support of its motion, Comcast argues that it complied with § 226.7 because McGill always had a "reasonable opportunity" to take rest breaks, which it claims satisfies its responsibilities under *Brinker Restaurant Corp. v. Superior Court*, 53 Cal. 4th 1004 (2012). McGill correctly counters that *Brinker* requires an employer to do more. Interpreting Labor Code § 226.7 as applied to IWC Wage Order No. 5-2001,[4] the California Supreme Court held that an employer "satisfies this obligation if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or

---

[4] Labor Code § 226.7 complements other legal prescriptions of rest and meal breaks. As relevant in *Brinker* and here, it prohibits an employer from "requir[ing] an employee to work during a . . . rest or recovery period mandated pursuant to an . . . order of the Industrial Welfare Commission . . . ." Cal. Lab. Code § 226.7. In his complaint, McGill identifies California Government Wage Order 9-2001 § 12 as the basis for rest break requirements, even though Wage Order 9-2001 applies to "persons employed in the transportation industry." Cal. Code Regs. tit. 8, § 11090. McGill should have identified Wage Order 4-2001, Cal. Code Regs. tit. 8, § 11040, which applies to technical jobs including the occupation "Cable TV service and installation." *See Which IWC Order?, Classifications*, California Department of Industrial Relations, Division of Labor Standards Enforcement, available at http://www.dir.ca.gov/dlse/whichiwcorderclassifications.pdf. Similar to other wage orders, Wage Order 4-2001 requires employers to "authorize and permit all employees to take rest periods." Cal. Code Regs. tit. 8, § 11040(12)(A). The Court finds the reasoning in *Brinker* applies to the language in Wage Order 4-2001.

Case No. 16-cv-05202-NC     17

discourage them from doing so." *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1040 (2012).

McGill offers evidence, sufficient to survive summary judgment, that Comcast did not permit McGill a reasonable opportunity to take rest breaks, and instead impeded or discouraged him from doing so. It is true that McGill concedes he voluntarily chose not to take some of his work breaks, in an effort to be conscientious and provide good customer service. *See* Dkt. No. 59-1 at 51–52. But this admission does not defeat the abundant evidence that McGill regularly experienced pressure to work through his breaks, because of the time demands built into Comcast's procedure for assigning and scheduling work.

For example, McGill testified that his schedule was "from 8:00 until whenever. On paper it was 8:00 to 5:00 but you worked until the last job was completed for the day." Dkt. No. 61-1 at 6. Similarly, McGill describes how his supervisors blew off McGill's complaints and refused to remedy the problem when McGill could not complete his assignments in the scheduled time periods, even after telling Comcast's dispatch service that he was running behind. Dkt. No. 61-1 at 7 ("The work has to be done by the end of the day [and you] can't push it out until the next day.").

This evidence suggests that Comcast assigned McGill more work than he could complete in an eight-hour work day, and supervisors were inflexible in responding to McGill's complaints. Taken as true, which the Court does on this disputed factual issue, this means McGill faced a tough alternative between meeting Comcast's expectations and taking the rest breaks legally owed to him. The Court finds the evidence of this trade-off is sufficient to defeat Comcast's motion for summary judgment on the issue of rest break violations, so the motion is DENIED on this claim.

**d. McGill Cannot Recover Punitive Damages or Attorney Fees.**

Finally, Comcast moves for summary judgment on McGill's claims for punitive damages and attorney fees. "[P]unitive damages are not recoverable when liability is premised solely on the employer's violation of the Labor Code statutes that regulate meal and rest breaks . . . ." *Brewer v. Premier Golf Properties*, 168 Cal. App. 4th 1243 (2008).

Case No. 16-cv-05202-NC          18

Similarly, the Labor Code does not entitle McGill to attorney fees. *See Kirby v. Immoos Fire Prot., Inc.*, 53 Cal. 4th 1244, 1254 (2012). Because McGill's only surviving claims are for Labor Code violations, Comcast's motion on punitive damages and attorney fees is GRANTED.

## IV. CONCLUSION

Comcast presents clear evidence that, at the least, its supervisors honestly believed McGill committed timesheet fraud, which is a legitimate and nondiscriminatory reason for McGill's termination. By and large, McGill offers little evidence in support of his claims that his termination was for unlawful reasons. Because the evidence does not rebut Comcast's proffered reason by raising triable factual issues of pretext, Comcast's motion for summary judgment is GRANTED as to McGill's first, second, third, fourth, sixth, and seventh causes of action. However, disputed factual issues remain as to McGill's fifth cause of action regarding rest break violations, so Comcast's motion is DENIED as to that claim. Comcast's motion is GRANTED as to punitive damages and attorney fees.

**IT IS SO ORDERED.**

Dated: October 30, 2017

_____
NATHANAEL M. COUSINS
United States Magistrate Judge

Case No. 16-cv-05202-NC    19